case number 24-0039 Kenneth Rosenbaum versus Stephen Samler. Good afternoon. My name is Sanjay Taylor. I'm the Presiding Justice of the 6th Division of the First District Appellate Court. I'm joined by my colleagues Justice Michael B. Hyman and Justice Carl A. Walker. If I can ask counsel to introduce themselves and each of you will have 20 minutes to present your arguments. For the appellant, if you would let me know how much of your 20 minutes you would like to reserve for rebuttal, I would appreciate that. So counsel for appellant. Good afternoon. Marcos Riley for appellant Kenneth Rosenbaum and I'd like to reserve five minutes. Okay, thank you Mr. Riley. And counsel for appellant. Good afternoon, your honors. Ryan Williams on behalf of appellees cross appellants Stephen Samler, Leia Samler, Eli Samler, and Jesse Samler. And your honors, just for clarification as a cross appellant, may I also reserve time for rebuttal? Yes, how much would you like? I would like three minutes please. Okay, so good afternoon Ms. Williams. Mr. Riley, you may begin. May I please the court. This is an appeal from the dismissal of the second amended complaint under 2615 and 2619. The initial complaint was never served or responded to, therefore plaintiff only had two chances to plead. No discovery was conducted and the defendants never answered the allegations. There is a cross appeal as noted. The cross appeal is from the denial of a sanctions motion. The issues overlap substantially since if the pleading should not have been dismissed then I think it follows logically that there should not have been sanctions granted. So I'm going to discuss this with reference to the appeal. It is of course well established that while Illinois is a fact pleading jurisdiction, it's not necessary to plead evidence only. Let me ask you a question. Yes. Why isn't it at least plausibly privileged the two letters, so-called demand letters? I know you disagree with that, but the letter is written by the two lawyers. Why aren't they privileged? Well, I think that's an issue of fact under the Horwitz case. The attorney may be an independent party whose judgment breaks the chain of causation, but that is dependent on the facts. That's not how the courts have addressed the issue. I mean, under your reasoning there would always be a fact question and that isn't how the courts have addressed this issue. It is a letter that comes within the privilege which can be determined on the facts in the complaint, then the claim shouldn't proceed. That's why you file a motion to dismiss. Well, respectfully there is an inherent fact question when agency is the basis for dismissal and also these letters were not sent during the pendency of any litigation. But that's a demand letter. It doesn't have to be. You know that. If it's necessarily preliminary, that's correct. If it's not, then it isn't. Well, wasn't it preliminary? I mean, there was a lawsuit that followed and weren't these involved in that? What happened later on? I mean, it's a lawyer. There's a reason we have that privilege. It's a very important privilege for all lawyers. And aren't you actually saying that you're weakening it if we agree with you? Well, I'm certainly not saying it's not an important privilege. I am a lawyer and I do agree with that. I think, however, that the circumstances have to be looked into individually and whether or not the fact that a lawsuit followed doesn't necessarily mean the letter was preliminary to a lawsuit. It is clear that there are other motivations based upon the contents of the letter and the allegations in the complaint. And that's why we have motions to dismiss. That's a fair point, Your Honor, but the context is important. What's different in this context from any other context, considering that lawyers were not employees of these people? That's true. So they're agents, which is typical. Very rare is it going to be employees, but it happens. So I'm just trying to find out why this case is different from all the other cases. Well, I can't speak to all the other cases, but this case is... But you have to differentiate in some way. In this case, one key fact that's different is that Mr. Stephen Samler had direct contact with his mother's estate planning lawyer before any of the letters were sent. And that attorney, who was the only person with knowledge, told him that there was no undue influence by my client. Well, that's right, but the attorney also suggested that he hire an attorney and investigate, which is really what he was doing. But I will tell you what I'd like to discuss just a little bit here. And there's probably no wrongdoing here in this particular case. I want to be clear about that. Probably not. That's where this is right now. But we're talking about a situation where previously the grandchildren were entitled to receive 95% of the estate. And then all of a sudden, the investment advisor is now getting 40% of the estate. Any person in this state would have contacted a lawyer, started an investigation, and decided that, well, let's look into this. And to me, that's all that was going on, is that they were looking into this until it turned into a lawsuit. And that lawsuit was subsequently dismissed. But I'm disturbed by this. So what I'd like to ask you to do is, to kind of take us forward, is just tell us that you've got, we've got nine arguments here that we need to deal with. What are the two or three arguments that you really believe you prevail on? With respect to the privilege? With respect to the entire case? Well, I think the defamation claims are the strongest. I think with respect to the privilege, that certainly it is legitimate to hire an attorney to investigate. And if you knew nothing else but what they put in their letters and their pleading, that would be arguably a reasonable course of action. But they knew more. They knew about the pre-existing personal relationship. They knew that Mr. Rosenbaum didn't cash all those checks that he was sent. They acted as if he did. It's a very unusual situation for a person to have tens of thousands of dollars in checks, which they don't cash, that indicates strongly he did not have a motive to seek financial favor or take advantage of Mrs. Samler. They also didn't investigate by talking to the estate planning lawyer. The attorneys who they hired disregarded the letter. And the reason for that is likely, as we've alleged, that Mr. Samler never told them about the letter. They were unaware. But the letter, just as Walker has indicated, the letter is not the end-all of this case. So that seems to me not to be a very good road to follow. But I want to get back to, you say the most important thing is the defamation per se and per quad. You're saying that that's your strongest case. And which letters are you talking about? Well, there are three letters. There's the Goldberg letter, there's the first Whitzer letter, and that is the second Whitzer letter. Although those are not the only defamatory communications, because as we pled, Stephen Samler communicated directly with Oppenheimer and with FINRA, and his communications made it onto FINRA's website for anyone to see. And the second Whitzer letter... But that's not his doing. And the fact that he communicated, again, the law doesn't seem to support you. That's a quasi-judicial body. Well, it is pled that he expected and intended the publication as a result of what he did. Oh, so intent. Where in the law does it say in defamation intent? We should look at intent. Do you have a case that says that? I don't have a case that says publication is a matter of intent, but I think that it's common sense if you're claiming there's no publication that somebody intended. We need to go on the law, okay? You're saying it was intent. It's not common sense. No case says intent is common sense. This is an issue. This is an important issue. So tell me why intent isn't involved here. If you have a strategy to publish a defamatory remark and you do it in a way that you know it will be published, I don't think you can escape liability or at least the possibility of liability for the consequences of your actions. If there's a defamatory statement. I mean, that's a question. That's a different question. It's a different question. But let's... Dr. Riley, where do you draw the line between someone who's got a legitimate beef and someone who is seeking to defame? My concern here is that if we were to rule in your favor, we would disincentivize clients from bringing wrongdoing to the regulator. Where do you draw that line? Well, I think that's a fact-based analysis, Your Honor. And respectfully, I think intent does play into it and context plays into it. And you have to, the court to make that determination has to take cognizance of everything that was reasonably known to the person who made the complaint at the time that they made it and their motivation, which is maybe a matter of inference, but you can make inferences from circumstantial evidence. You can't do that at the pleading stage. Well, so if the client here felt that he was wronged, that the financial advisor violated some rules or laws, and the fact that maybe he even wanted to see that the advisor was punished for those wrongs, that's protected, isn't it? That wouldn't be subject to defamation simply because he wanted to see the person punished. Well, I think that the motivation is separate from the effect, but I think it's clearly defamatory to accuse a financial advisor of taking advantage of a client. There is, in fact, a criminal statute that makes it a crime. It's also an imputation of professional dishonesty and lack of ethics. But we're not talking about a criminal, we're not calling a criminal here, undue influence. And that's exactly what Justice Taylor's talking about. People find these what was done here. They had a belief of undue influence, and they wanted to investigate it. Now, it was later dismissed. But still, in and of itself, again, without that intent, I don't see where it gets you. And I don't think you've really addressed Justice Taylor's question. And let me just follow up. Let's take it one step further. We have a regulator for lawyers in the state. If we were to rule in your favor, that would disincentivize clients from bringing wrongdoing to the regulator for lawyers, the ARDC, because they might be exposed to claims of defamation. Well, I think lawyers are maybe a special case, and this is not obviously an ARDC case. There is obviously an incentive that goes both ways. And the privilege is addressed to not disincentivizing. Particularly, it started out with counsel, encouraging counsel to be zealous and not disincentivizing them by penalizing them. But on the other hand, the privilege is not supposed to be a free pass for any kind of malicious conduct. And the mere hiring of an attorney is not, I don't think any case holds, just sufficient as an inherent defense to absolve the client from any responsibility for the attorney's actions, especially if the client is essentially the puppeteer and the attorney's the puppet, and the client's telling the attorney only what he wants the attorney to know. And personally, intervening and communicating, I would also say that they didn't just ask for an explanation. They filed a lawsuit and they made the same accusation. And then in the face of a summary judgment motion, they had no evidence. They produced no evidence. They did not respond, and they lost. They lost. This case is not about that lawsuit. It's all a continuing course of conduct. No, it isn't a course of conduct. You filed a separate action. We're there. That case is not before us. That's a fine. That's true, Your Honor. But we are suing for malicious prosecution and abusive process. Yes, you are. But, you know, tell us how you've met that standard there, particularly where there are damages that you seek, or attorney fees, and there is no case that says the American rule doesn't apply. And in this situation, the cases you cite talk about legal malpractice cases where attorney fees are provided for. But this isn't a legal malpractice case. And so with regard to that claim, which would fall because of the defamation claims fall, tell us how that claim even gets to us. Oh, I agree. It's passed. The motion is dismissed. I agree with you that there is no case on point. There's no case that holds that attorney's fees can be special damages for purposes of the malicious prosecution claim. There's also no case that holds that they can't. So there has to be some kind of an inference. You can say that they can't because in no case they has. And this is not something that's brand new out of the box. And so I don't think it's a question of first impression. You haven't said that in your brief. So there is no precedent. And if you have none, if there is anything, tell us, tell anywhere in the country, let us know right now. Is there if you had it, you would have, I'm sure, cited it. That's right. And I looked, however, there's several different categories of attorney's fees that the trial court blended together. It's not only fees incurred in defense of the plaintiff in the previous cause of action. He was forced to pay his employer's fees and he had to pay respond to FINRA. That's typical as an attorney, you know, sometimes you have other counsel that represent other parties and there's agreements, a joint defense or payment of costs, or maybe he has a contract, whatever it is, that doesn't, there's no cases that those types of costs are recoverable. I have not found any. I haven't found any to say that they're not either. So as far as your damage is concerned, there isn't any precedent. Okay. That's a fair statement, Your Honor. Thank you. So we're at about 15 minutes now. I wanted to reserve a little bit for rebuttal. Anybody has questions, I'm happy to answer, but just want to make that point. Okay. Thank you, Mr. Riley. Mr. Williams. Thank you, Your Honors. May it please the court. And I very much appreciate your time in hearing this case today. Your Honors, this case involves a father and grandchildren who merely had the temerity to question why their loved mother and grandmother, who was in excess of 100 years old, why her trust came to be changed such that her stockbroker became a 40% contingent beneficiary in that trust. And so what... But dear clients, I mean, there was no evidence. According to the complaint, there's no evidence. Her attorney said she was competent. And I'm sure her son and the grandchildren knew the type of personality she was. She sounded like a very strong-willed individual and competent till the end from what is in the complaint. And that we heard repeatedly about withholding facts from counsel. That's not showing any kind of good faith here. Well, Your Honor, so Justice Hyman, I believe that what this family did, and in particular, the father, did what any reasonable family would do under the circumstances. And that's that they went out and they sought the advice of counsel. But why didn't you tell them about the letter from her Mr. Shapiro? Well, so first and foremost, Your Honor, that is nowhere alleged in any of their complaints. The only place where that allegation is made is actually in their proposed Third Amendment complaint, where they asked the court for reconsideration and for leave to file the Third Amendment complaint. My understanding, at least, is that it comes from, to Justice Taylor's point, it comes from an ARDC complaint that was filed against the attorney who filed this lawsuit on behalf of the Samlers, seeking a declaration of undue influence. And so that fact is nowhere alleged other than in a proposed Third Amendment complaint, first and foremost. And in addition to that, Your Honor, I think that to the circuit court's point, this letter that is relied upon so heavily, where Louis Shapiro, the estate attorney said, to my knowledge, there wasn't any undue influence, isn't really as advertised. This isn't a situation where Mr. Shapiro said, there wasn't any undue influence. I was the only person involved in all these discussions. And I can say with 100% confidence, there wasn't any. He said, to my knowledge, there hasn't been any. And so this highly qualified statement, as contained in this letter, as the circuit court held, it most certainly shouldn't be afforded the importance that the plaintiff seeks to place on it. Well, what about the fact that it's in accepting what you're saying? Okay. So it's in the Third Amendment complaint, which the court did not allow to be filed. Shouldn't we allow the Third Amendment complaint because of that allegation and some of the others that they make? I mean, even if we agree with everything you say, doesn't it make sense in light of what you just said that we allow the Third Amendment complaint to be filed and considered by the court? So, no, your honor. And here's why. I mean, ultimately, whether leave is granted to file this Third Amendment complaint is soundly within the discretion of the circuit court. And the circuit court did not abuse its discretion in terms of denying leave to replete. There is no. So let's go to that. That's the question. I mean, why is it? But, you know, judges give more than two chances on a lot of times. Why in this case, when they have something new to say, shouldn't it be abuse of discretion not to give them another chance? No, your honor. And here's why. Because ultimately, um, we have to look at the factors right for whether leave to to to replete is properly denied. And so ultimately here, there are two factors in particular that I think are are particularly pertinent. Timeliness being the first. Ultimately, this the the three new paragraphs that go into this Third Amendment complaint, they could have been brought up with the court prior to court issuing its dismissal order with prejudice. There is no reason why those facts could not have been alleged via the Second Amendment complaint. And they were not. Well, in addition, isn't the real issue here that the the court pointed out the deficiencies in the complaint and the amended complaint didn't address the deficiencies? That's exactly where I was going to go next. Your honor. Thank you. That's exactly correct. There are three new paragraphs that are added to this Third Amendment complaint. None of those three paragraph paragraphs address any of the deficiencies with the Second Amendment complaint and with the First Amendment complaint ultimately being dismissed without prejudice plaintiff and his counsel having a very clear roadmap as to all of the various deficiencies and things that could not be played around at all. For instance, absolute litigation privilege. The circuit court held that that privilege applied to these attorney drafted sent communications. And if that privilege applies malice, all it doesn't matter with with what intent the letters are sent. All that matters is that the privilege applies. So to your honor's point, those three paragraphs that were added, they do nothing to save this Third Amendment complaint. They don't address any of the issues that were previously raised by the circuit court. So let's take it another direction really quickly, because though the overall facts in this case still disturbed me greatly, the Mr. Riley is arguing that to some extent into a large extent that your client has accused him of committing a crime. And therefore, his position is that the complaint should go forward because he believes, I believe he said that he believes defamation is his strongest argument here. So, Judge, to that point, first and foremost, so number one, really, that's a question of whether it's defamation per se or defamation per qua, right, in terms of whether a crime is alleged. The statute that they say would show that undue influence is a crime. It very specifically deals with concepts like withholding food, withholding funds, various things that are nowhere alleged that Mr. Samler said with respect to. And frankly, it's not alleged Mr. Samler said anything with respect to Mr. Rosenbaum. All that's alleged is that the attorneys said various things via these demand letters. But ultimately, that's not really the issue, whether it's defamation per se or per qua, because ultimately, the absolute litigation privilege is plainly applicable to these letters, to these demand letters that serve as the basis for the defamation claims. And so whether defamation per se, whether defamation per qua, regardless of the intent in sending those letters, the absolute litigation privilege very clearly applies if, in fact, the letters are simply pertinent to the litigation that was ultimately filed. And this pertinency requirement, it is not strictly complied. It is construed in favor of pertinency. And I think there's no ifs, ands, or buts about it. I don't even think that Mr. Riley would contend that these letters that deal with this exact concept of undue influence on the grandmother, that that wasn't the exact subject matter of the declaratory judgment action that was ultimately filed against both Oppenheimer and Mr. Rosenbaum. So are you saying that, I'm not trying to put words in your mouth, I just want to know if your strongest argument is the privilege applies, so we don't even get to the defamation. So, so correct, among others, but yes. I know, I'm not saying that's your only argument. Yes. But, but Mr. Riley said his strongest argument that he gave us was the defamation. Okay, so just fallback position. Okay, so if we don't buy the privilege, why does it, tell us your strongest argument against his strongest argument. If we're taking out, taking out the privilege? No, taking out the privilege, yes. Okay, so, so taking out the absolute litigation privilege, I think that there are multiple issues with respect to both, so, so, so with respect to both defamation per se and defamation per plot. Let me start with defamation per se. So number one, the sole correspondence that I think could even arguably be alleged to have been published to someone, to a third party who was ultimately a defendant in the lawsuit, is that first piece of correspondence. And that the first piece of correspondence, it was sent to Oppenheimer. It said, look, there's a presumption that when a person stands in a fiduciary relationship with a, or stands in a fiduciary relationship, as in this instance, a stockbroker with his client, there is a presumption that there is undue influence if there is a financial benefit that goes to that person. That's what the first letter says. Doesn't accuse him of criminal misconduct, anything along those lines. It merely says there's a presumption of undue influence. And ultimately, that letter was sent to Oppenheimer more than a year prior to the filing of this defamation lawsuit. So first of all, we have, is it defamation per se? We would contend it's not. It doesn't accuse him of a crime. It talks about a presumption that gives, that is, that, that based on the fiduciary relationship, there's undue influence. Number two, it's time barred by virtue of the one-year statute of limitations for defamation claims. And ultimately, I think that those are the two big issues with that particular letter. So then we look at the subsequent letter, that the only letter that falls within the statute of limitations, the one-year statute of limitations. That letter was sent to Mr. Rosenbaum directly. And it's cc'd, or I'm sorry, I'm sorry. Yes, it was sent to Mr. Rosenbaum directly. And it's cc'd Mr. Sammler's attorney, which we showed via an invoice, via our 619.1 motion to dismiss, where the invoice shows, not only was it an invoice to Mr. Sammler for legal services from Mark Eisenberg, who cc'd on this second letter, but it is also an invoice that shows that Mr. Eisenberg was speaking with Mr. Weitzker about this undue influence claim in various ways, the facts giving rise to it. So ultimately, with respect to the first letter, we find ourselves in a situation where I frankly don't think it could be considered defamation, per se, to begin with. And number two, it's time barred. And with respect to the second letter, where you need to show for defamation per quad, the letter that falls within the ultimate, that falls within the statute of limitations, even if it is defamation per se, it is ultimately a situation where that letter wasn't published. It simply wasn't published to anyone. It was published to Mr. Rosenbaum. So and then beyond that, if we're talking defamation per quad, I mean, I think that the law in Illinois is very clear about the damages requirement, the special damages requirement. And it can't just be emotional distress, it can't just be the time and dealing with it. It can't be these vague allegations, it needs to be rock solid special damages. And the only special, you know, quote unquote, special damages that are being alleged are attorney's fees, which under the American rule just simply is not a recoverable I want to shift gears here for a moment to buy to the the motion for sanctions. And your honors, I truly do not take lightly filing a motion for sanctions. It is not something that I relish at all. But I will say this. If there ever was an instance where sanctions are warranted, this is that instance, your honors, then the we refrained from doing anything with respect to the first amended complaint. And we put out all the law, the well known law, including the law surrounding the absolute litigation privilege that is literally come from the Illinois Supreme Court as early as 1870. We put all of this law out there. And the circuit court came back and we didn't seek sanctions. Even though I felt at that point, there really wasn't sufficient due diligence done on this, there wasn't sufficient research done on this, it was absolutely inadequately played. And some of these claims just simply could never properly be played in light of the privilege. But we were frank. We then get this detailed, lengthy 13 page opinion from the circuit court that spells out with specificity all of the various issues. It applies the absolute litigation privilege. It points out all of the various issues. It applies Horowitz, for which which is a very important case, because ultimately, the client is never is not in a position to micromanage their attorneys to ensure their attorneys are adhering to their ethical obligations. And so we put all that out there, your honors, we get this detailed opinion. And what is the response then to that opinion? It is very simply this opinion ignored, disregarded. And we're going to assert the exact same claims based on the exact same alleged defamatory communications that the court already held were absolutely privileged. And it wasn't as though there was arguments made up. Well, the law should be expanded or there should be an exception. The argument was this. You're wrong, Judge. That was the argument. And then from there, we get another we get a motion for reconsideration. If I understand your yes, what you're saying is that maybe they should have just left it alone and appealed at that time, if they wanted to. But they didn't. And they didn't do much of a difference. And they incurred for your clients a lot of time and money as a result of not doing anything substantive in the second amendment. If there had been something substantive, then you're saying there wouldn't be a basis for sanctions. But in the fact that the judge gave it to you and did a very thorough job in his analysis and dismissing the complaint. So that's your argument. I just want to make sure that's exactly right. And ultimately, to the extent that the argument and this was the argument is that just simply you're wrong. We are entitled to our special damages. There's some that and this was the argument before the circuit court was that you're wrong. We are entitled to attorney's fees. You're wrong. The privilege doesn't apply. It wasn't as though, oh, well, there's some special exception or there's some there should be some extension. And so to your honor's point, you're absolutely correct. That's exactly why I had to make the difficult decision to file this motion, because from our perspective, the correct posture here would have been to simply say we disagree and we are going to appeal this. And that's fine. They have an appellate right. They have the right to have your honors review what happened. But to continue for to file this second amendment complaint that the circuit court said is not officially different from the first to file a motion for reconsideration, to seek leave, to file this third amendment complaint. It all resulted in significant fees to my clients. And I think the only conclusion that it really leads to is that the purpose of this, especially given the complete lack of merits of this case as pledged, is that really this case is designed to punish my clients, to make to cause them financial hardship in light of the fact that they questioned why this trust was changed. Mr. Williams, you're at time. Thank you. Anything else you want to say to wrap up? You know, just I'd like to ask Mr. Williams to respond to the question that you asked earlier of Mr. Riley regarding what impact this could have on others who may have been similarly situated. So I think that this could have this case could potentially have an enormous impact on many things to Justice Taylor's point, to reporting to the ARDC, to your point, reporting to FINRA. And FINRA is obviously a very important organization. It's where the SEC does its compliance actions. It is where people go to report incidences to regarding stockbrokers, traders in terms of times that they felt that they've been harmed or that they've been duped out of money, things along these lines. The ability to report and the ability to go to FINRA, to go to the ARDC, to hire lawyers, to analyze situations and do things within that lawyer's ethical bounds are. Or even send a letter to Oppenheimer. Correct. They were they were they hit the button. It is incredibly important. OK, thank you, Mr. Williams. Thank you, Mr. Riley. You have five minutes and rebuttal. OK, well, five minutes won't do it, but I'll take five to start with the criminal statute that we've been discussing. This is addressed in my reply brief. It is not correct that the statute confines criminality to cases of coercion. It specifically says, and I cited this section, you can read it for yourselves, instances of undue influence. And they uses that term by a person who is a fiduciary are per se the Goldberg letter almost specifically alludes to the statute, although it doesn't cite it. The subsequent letters clearly are addressed to the same thing. Anybody in the financial industry would know. You can't even consider the Goldberg letter of the statute ran. It's a continuing course of conduct. Where do you get that? It's two different lawyers signing two different letters with regard to the same issues. The same causes, you know, the same thing. I mean, it's it's not a continuance of anything. Sorry, I didn't mean to interrupt. It's the same client through different lawyers making the same defamatory accusations as part of a plan to try to discredit my client and damage his reputation with his employer. It's the industry. If we don't look. What's your best case as to why? I mean, that's your only basis is it's continuing. Otherwise, the Goldberg letter falls by the wayside, correct? That's the argument there. But I want to address the other letters because this statement's been made that they only went to my client. It's specifically pled that sending to the letter to him at his office was an intentional ruse to get Oppenheimer to read it and that they did read it. And this is probably what they consulted with Mr. Eisenberg about because he's a specialist in the securities industry. They knew that Oppenheimer's compliance department and legal department would see this letter before my client did. And that is, in fact, what happened. Again, intent. You're going back to the intent that we talked about before. Does the letter have defamation in it? You're saying, well, it's defamatory because of what happened later. No, I said it's defamatory and he intended to be published. This is the publication element and not the defamation element. They're saying it was not published. I'm saying this is how he published it. How can anybody control third parties what might or might not happen? You're saying it's part of a plot that they cooked up. But again, that's not how the law seems to have developed. If you know the industry and you know the policy of brokers, you can predict what will happen and you can certainly predict that a letter like this will go to the compliance department before it goes to the broker. And they knew it and that's what happened and that is publication. And getting the same information onto the FINRA website is also publication. They caused it. They communicated it to FINRA knowing it would become public. That is publication. I want to speak for a minute to the sanctions issue. It's rather ironic that the Samuels filed a lawsuit against my client with no evidence whatsoever and nobody asked for sanctions. And yet they think that my client should be sanctioned for trying again one time to replete his case. This is a discretionary decision. It's very clear. Samuels have argued that just because the court didn't articulate reasons for his decision that that makes it arbitrary. The law is very clear that that's not true. Trial court is not required to articulate reasons to deny sanctions and that that is not a reason to overturn the trial court's decision on that issue. I think that's really all that needs to be said about the cross appeal. Okay. That was about five minutes. You have one more minute. Well with respect to. You don't have to take it but I'm just telling you. One minute. With respect to the privilege I think the issue is more complicated than can be addressed here and the court has access to the file. I will say that it is not true that the second amended complaint is not different from the first amended complaint. We actually went to the extent of filing a red line which is in the court file. I with all due respect to the trial court I think the trial court did not carefully read it and took the Sammler's characterization of the pleading as the pleading rather than reading the pleading and taking the pleading as true which is what a trial court is supposed to do. Okay. Any questions for Mr. Reilly from the panel? Okay. Seeing none. Thank you Mr. Reilly and Mr. Williams. You have three minutes and Very good. So I will be very quick about this. With respect to the publishing issue and third parties publishing or the concept that it's going to be intercepted by someone else. The circuit court very clearly addressed that via the POP, the O'Neill case. That's 313 3D 638. This is not actually sir. This is your reply on your. My apologies your honor. Let me let me just address then the sanctions issue. Here's the ultimate point. What we did was show temperance and we ultimately filed a motion for sanctions after the judge's opinion was just completely ignored via the second amendment complaint. We filed sanctions in this lawsuit. We sought 137 sanctions from our judge in this lawsuit. What we did not do is exactly what Mr. Rosenbaum did and that's this. What we did not do is wait, win and then file a separate lawsuit seeking the reimbursement of our fees incurred in this lawsuit by contending that this lawsuit was malicious prosecution or some form of abusive process. We followed the correct procedure of seeking sanctions in front of our trial court judge not in filing a separate lawsuit when that is not the way to seek fees if Mr. Rosenbaum felt that he was harmed. Okay. Any questions of Mr. Williams from the panel? Okay. Okay. Thank you Mr. Riley and Mr. Williams for your zealous advocacy this afternoon. The matter is submitted and the court will issue a decision in due course.